```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALAN LUBIN, BONNIE LUBIN,
JASON LUBIN and JEREMY LUBIN,

                        Plaintiffs,

        -against-

JEFFREY DUBIN, DOUBLE D ASSOCIATES,
INC., VENESCO CONSULTING, INC.,
CLAUDINE KATZMAN DUBIN, DUBIN &
DONNELLY, JACK FEINTISCH, DUBIN,
DONNELLY & KANIUK, JAMES HUSSEY,
WILLIAM BIAMONTE, and
CALIFORNIA COOL ROOFS, INC.,

                        Defendants.
------------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  FEB 2 4 2014  ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 13-6619

(Wexler, J.)

APPEARANCES:

    RAISER & KENNIFF, P.C.
    BY:   JAMES M. INGOGLIA, ESQ.
    Attorneys for Plaintiffs
    300 Old Country Road, Suite 351
    Mineola, New York 11501

    DAVID BOLTON, P.C.
    BY:   DAVID BOLTON, ESQ.
    Attorney for Defendants
    666 Old Country Road, Suite 509
    Garden City, New York 11530

WEXLER, District Judge:

    Before the Court is the Defendants' motion to dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition, Defendant James Hussey ("Hussey")

-1-

moves to dismiss the Complaint as alleged against him, pursuant to Federal Rule of Civil Procedure 12(b)(2), on the ground that the Court lacks personal jurisdiction over him. For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

BACKGROUND

In or around 2002, Plaintiffs sold their family business, Le Drug Store, and were referred to Defendant Jeffrey Dubin ("Dubin") and his accounting firm for the purpose of potentially investing the proceeds from the sale of their business. (Compl. ¶¶ 14, 18-19.) Dubin suggested that Plaintiffs invest the proceeds into certain investment vehicles that he was associated with as an accountant and financial advisor, including Defendants Double D Associates, Inc. ("Double D") and Venesco Consulting, Inc. ("Venesco"). (Compl. ¶ 19.)

To induce Plaintiffs into investing in his companies, Dubin orally represented to Plaintiffs on multiple occasions that he would not only repay their investments, but that he would do so with interest, on an ongoing monthly basis. (Compl. ¶ 22.) Ultimately, Plaintiffs agreed to invest with Dubin and did so as follows: (1) Alan Lubin invested $200,000 with Double D and $100,000 with Dubin and (2) Bonnie Lubin invested $150,000 with Double D and $250,000 with Venesco. (Compl. ¶¶ 25-26.) Thereafter, Jeremy Lubin, who was working for Dubin as an intern, invested $55,000 with Double D. (Compl. ¶ 27.) Jason Lubin invested $45,000 with Double D as well. (Compl. ¶ 27.)

During the investment process and afterward, Plaintiffs requested on numerous occasions that Dubin produce promissory notes and/or other documentation evidencing their investments. (Compl. ¶ 24.) However, Dubin repeatedly failed to produce any such documentation, assuring

Plaintiffs that the investments were trustworthy and that he would produce the underlying documents at a later time. (Compl. ¶ 24.) Dubin never produced the requested documents. (Compl. ¶ 28.)

In connection with their investments, Plaintiffs were all assured that they would be paid on a monthly basis at various interest rates, as agreed to by Dubin. (Compl. ¶ 28.) For a period of time thereafter, Plaintiffs were in fact paid the promised interest rates on a monthly basis. (Compl. ¶ 28.) However, Dubin still failed to produce any underlying documents for Plaintiffs' investments. (Compl. ¶ 29.)

On April 26, 2011, per Alan Lubin's written request, Dubin sent correspondence to the Lubin residence, providing a "status report" on the various investments Bonnie and Alan Lubin had made with Double D and Venesco. (Compl. ¶ 30.) However, Dubin failed to provide any type of status report with respect to Jeremy and Jason Lubin's investments. (Compl. ¶ 30.) During this time, Plaintiffs were still receiving some monthly interest payments, but it was far below what was agreed to. (Compl. ¶ 31.) These partial payments continued on and off until approximately January 2012, when all payments abruptly ceased. (Compl. ¶ 31.)

Thereafter, Plaintiffs repeatedly requested to be provided with information concerning the status of their investments, as well as an explanation for why their interest payments had ceased. (Compl. ¶ 32.) Plaintiffs also demanded that Dubin repay the principal balances owed to them, but Dubin has not complied with any of Plaintiffs' requests. (Compl. ¶ 32.)

On March 3, 2013, Alan Lubin demanded, during an in-person meeting with Dubin in Dubin's office, that Dubin provide specific documents and details regarding Plaintiffs' investments. (Compl. ¶ 34.) Dubin advised Alan Lubin that he would provide him with the

requested information, but failed to do so. (Comp. ¶ 34.) On April 2, 2013, Alan Lubin again spoke with Dubin at his office and was advised that he would receive the original promissory notes the following day from Dubin's attorney. (Compl. ¶ 35.) Again, Alan Lubin did not receive the requested documents. (Compl. ¶ 35.)

Plaintiffs allege that Dubin, along with his wife, Defendant Claudine Katzman Dubin and his business partners, also named as Defendants, used the funds invested by Plaintiffs for improper personal and business expenditures, including to make mortgage payments on both Dubin's home and his business property, as well as to purchase multiple pieces of real property, luxury automobiles and boats. (Compl. ¶¶15-16, 37.) According to Plaintiffs, during the last six years, Dubin has also fraudulently or otherwise unlawfully transferred the assets of Double D and Venesco out of those entities and into other entities controlled by Dubin - such as his family members and the other named Defendants - without providing fair value, ultimately rendering Double D and Venesco insolvent. (Compl. ¶ 38.)

Plaintiffs commenced this action on November 27, 2013, alleging federal claims for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, <u>et seq.</u>, as well as a myriad of state law claims including <u>inter alia</u> negligence, fraud, breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, conversion and unjust enrichment. In connection with their Complaint, Plaintiffs have also made a motion for pre-judgment attachment, which is <u>sub judice</u>. Defendants now move to dismiss on the ground that the Complaint fails to state a claim upon which relief may be granted. In addition, Defendant James Hussey moves to dismiss for lack of personal jurisdiction.

## DISCUSSION

I. <u>Defendant Hussey's Motion to Dismiss for Lack of Personal Jurisdiction</u>

Defendant Hussey, a resident of California, seeks to have this action dismissed as alleged against him for lack of personal jurisdiction. In opposition, Plaintiffs assert that Hussey transacted business in New York, therefore subjecting him to the Court's long-arm jurisdiction.

    A.    <u>Legal Standard</u>

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. See <u>Villanova v. Harbilas</u>, No. 08 Civ. 10448, 2010 U.S. Dist. LEXIS 37797, at *6 (S.D.N.Y. Apr. 12, 2010) (citing <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). Where, as here, the Court is only considering the pleadings and affidavits on the motion to dismiss, "the plaintiff need only make a prima facie showing" that jurisdiction exists. <u>Villanova</u>, 2010 U.S. Dist. LEXIS 37797, at *6 (quoting <u>CutCo Indus., Inc. v. Naughton</u>, 806 F.2d 361, 364 (2d Cir. 1986)); <u>see also</u> <u>O'Keefe v. Blue & Gold Fleet L.P.</u>, 634 F. Supp. 2d 284, 285 (E.D.N.Y. 2009). In addition, the Court "must construe all of the allegations in the light most favorable to the plaintiff, and the plaintiff need only plead good faith allegations of fact that, if credited, would support jurisdiction over the defendant." <u>O'Keefe</u>, 634 F. Supp. 2d at 285 (citing <u>Witaker v. Am. Telecasting, Inc.</u>, 261 F.3d 491, 495 (2d Cir. 2001)). In deciding a motion to dismiss for lack of personal jurisdiction, a court may rely upon materials outside of the pleadings. See <u>Villanova</u>, 2010 U.S. Dist. LEXIS, at *6-7.

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." <u>O'Keefe</u>, 634 F. Supp. 2d at 286 (quoting <u>Thomas v.

Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)) (additional citation omitted); see also Villanova, 2010 U.S. Dist. LEXIS 37797, at *7 ("Personal jurisdiction may be exercised over any defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district courts is located."). Here, the Court must look to New York's long-arm statute, N.Y. C.P.L.R. 302(a), to determine whether the defendant, a resident of California, is subject to personal jurisdiction in New York. See O'Keefe, 634 F. Supp. 2d at 286 (citing Whitaker, 261 F.3d at 209) (additional citation omitted). "If the exercise of jurisdiction is appropriate under [New York's long-arm statute], the court must decide whether such exercise comports with the requisites of due process." O'Keefe, 634 F. Supp. 2d at 286 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)) (alteration in original); see also Villanova, 2010 U.S. Dist. LEXIS 37797, at *7 ("If plaintiff is able to establish a factual predicate for jurisdiction under the laws of the forum state . . . then the court must consider whether the exercise of jurisdiction violates due process."). Where the plaintiff fails to establish a basis for asserting jurisdiction over the defendant, however, the Court need not engage in the constitutional analysis. See O'Keefe, 634 F. Supp. 2d at 286 (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244 (2d Cir. 2007)).

    B.    <u>Long-Arm Jurisdiction</u>

New York's long-arm statute, which provides jurisdiction over non-domiciliaries, provides that a court may exercise personal jurisdiction over any non-domiciliary who <u>inter alia</u> transacts any business within the state or contracts anywhere to supply goods or services in the state. See N.Y. C.P.L.R. § 302(a)(1). Pursuant to C.P.L.R. 302(a)(1), a non-domiciliary "transacts business" for purposes of long-arm jurisdiction when he "purposefully avails [himself]

of the privilege of conducting activities within [New York], thus invoking the benefit and protections of its laws." Cutco Indus., 806 F.2d at 365 (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967)); see also Best Van Lines, 490 F.3d at 246. "Courts look to 'the totality of the defendant's activities within the forum,' . . . to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity . . . .'" Best Van Lines, 490 F.3d at 246 (quoting Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975)) (alteration in original); see also Morsy v. Pal-Tech, Inc., No. 07 Civ. 2143, 2008 U.S. Dist. LEXIS 59804, at *12 (S.D.N.Y. Aug. 7, 2008) ("Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity . . . ."). In addition, courts "require a 'substantial nexus' between the business transacted and the cause of action sued upon." Morsy, 2008 U.S. Dist. LEXIS 59804, at *12 (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996)); see also Best Van Lines, 490 F.3d at 246 ("[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."). "[P]roof of one transaction in New York is sufficient to confer jurisdiction [over a nonresident] as long as the activities of the defendant in question were purposeful and there is a substantial relationship between the transaction and the claim asserted." Weil v. American Univ., No. 07 Civ. 7748, 2008 U.S. Dist. LEXIS 1727, at *17 (S.D.N.Y. Jan. 2, 2008) (quoting Staten Island Hosp. v. Alliance Brokerage Corp. 560 N.Y.S.2d 859, 861 (2d Dep't 1990)) (second alteration in original).

Plaintiffs conclusorily allege that Hussey "has transacted significant business with and on

behalf of Dubin in New York" and that "Hussey's contacts with New York are abundantly clear." (Pl. Mem. of Law 3.) However, Plaintiffs offer nothing than more than unsupported allegations in an attempt to establish that jurisdiction over Hussey is proper here. For example, Plaintiffs allege that Hussey "has paid various New York taxes" and that he has been paid "significantly more than any other employee[] of Venesco." (Id.) Such conclusory allegations are insufficient to confer jurisdiction over Hussey.

It is undisputed that Hussey is both a resident of and employed in the state of California. (Hussey Decl. ¶ 2.) It is further undisputed that Hussey does not own any real property in New York; nor does he maintain an office or a telephone number in New York. (Id. ¶ 3.) To find long-arm jurisdiction under C.P.L.R. 302(a)(1), "there must be some transaction attributable to [the defendant] which occurs in New York." Penn Group, LLC v. Slater, No. 07 Civ. 729, 2007 U.S. Dist. LEXIS 50651, at *30 (S.D.N.Y. June 13, 2007) (quoting Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 284 (1970)). Plaintiffs have failed to satisfy this requirement.

In an effort to save their argument that Hussey is subject to personal jurisdiction here, Plaintiffs alternatively assert that jurisdiction is proper under Section 302(a)(3) of the C.P.L.R., which provides long-arm jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state." N.Y. C.P.L.R. § 302(a)(3). According to Plaintiffs, Hussey has "committed multiple tortious acts against the Plaintiffs by causing them financial injury in New York by accepting a transfer of assets, including his inflated salary and bonus payments from . . . Venesco, without providing fair value and exchange." (Pl. Mem. of Law 4.)

However, Plaintiffs conveniently ignore the next part of the long-arm statute, which provides that a defendant is only subject to jurisdiction under this provision "if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). Plaintiffs have offered nothing from which the Court can conclude that Hussey meets either of the foregoing qualifications. As "New York courts have cautioned . . . defendants, as a rule, should be subject to suit where they are normally found . . . or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact." E-Z Bowz, 2003 U.S. Dist. LEXIS 15256, at *20 (quotation omitted). This is not such a case.

For the foregoing reasons, Defendant Hussey's motion to dismiss for lack of personal jurisdiction is granted.

II.     The Remaining Defendants Motion to Dismiss for Failure to State a Claim

The remaining Defendants move to dismiss the within action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the grounds that Plaintiffs' Complaint does not adequately plead a civil RICO claim. Plaintiffs oppose the motion.

A.      Legal Standard for a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 129 S. Ct. at 1949; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 129 S. Ct. at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 557). Rather, only a complaint that "states a plausible claim for relief" will survive a motion to dismiss. Iqbal, 129 S. Ct. at 1950.

B.  Plaintiffs' Civil RICO Claim

18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). To establish a RICO claim pursuant to Section 1962(c), a plaintiff must prove "(1) a violation of the RICO statute . . . (2) an injury to

business or property; and (3) that the injury was caused by the violation of Section 1962." Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 107 (2d Cir. 2001). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Here, Plaintiffs' RICO claim is wholly devoid of merit. Plaintiffs' Complaint merely parrots the boilerplate language of a RICO violation, without providing any factual support for the claim. Plaintiffs have failed to properly plead either the existence of an enterprise or a pattern of racketeering activity. At its core, this action is nothing more than a simple breach of contract and, at most, a case of common law fraud.[1] For the reasons set forth below, the allegations asserted in Plaintiffs' Complaint fail to rise to the level of a federal RICO claim.

1. Enterprise

A RICO enterprise is defined broadly and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing of a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct" which then functions as a "continuing unit." United States v. Turkette, 452 U.S.

---

[1] Tellingly, while Plaintiffs' Complaint contains sixteen causes of action, the first fourteen are state law claims. Plaintiffs do not even allege a RICO violation or a RICO conspiracy until the last four pages of their thirty-page Complaint. Rather, the bulk of Plaintiffs' claims are state law causes of action. Including the RICO claims appears to be nothing more than a thinly veiled attempt to confer federal jurisdiction over this action in an effort to utilize RICO's treble damages provision.

576, 583 (1981); see also United States v. Morales, 185 F.3d 74, 80 (2d Cir. 1999). Defendants alleged to be members of the enterprise unit must "share a common purpose to engage in a particular fraudulent course of conduct" and work together to achieve their goal. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004).

In support of a claim that there exists a RICO enterprise, a plaintiff must also plead that each defendant participated in the "operation or management" of the enterprise. First Capital, 385 F.3d at 175-76. This requires a showing that each had "some part" in "directing the affairs of the enterprise." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit. See DeFalco, 244 F.3d at 309. Additionally, a claim of a RICO enterprise must be supported by information "regarding the hierarchy, organization, and activities of the alleged enterprise," to support the allegation that the enterprise is a functioning unit. Continental Fin. Co. v. Ledwith, No. 08 Civ. 7272, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009) (citation omitted); see also Mikhlin v. HSBC, No. 08-CV-1302, 2009 WL 485667, at *3 (E.D.N.Y. Feb. 26, 2009).

While the standard for pleading an enterprise in this circuit is liberal, the court cannot conclude that Plaintiffs' Complaint reaches even this low threshold. A RICO "association in fact" enterprise requires at least the pleading of an organized entity, and not, as here, pleading only that a group existed to commit fraud. The Court notes that while the Complaint purports to allege that Dubin engaged in both wire fraud and mail fraud, these alleged acts have no factual connection whatsoever to the other Defendants.

Additionally, there is no information in the Complaint, nor can any be inferred, as to any

hierarchy, organization or activities of the alleged enterprise. Plaintiffs merely lump all of Dubin's associates, family members and corporate entities together in an attempt to manufacture an enterprise. Such allegations are necessary to properly allege that the enterprise functioned in an ongoing manner "as a unit." See Wild Edibles Inc. v. Industrial Workers of the World Loc. 460/640, No. 07 Civ. 9225, 2008 WL 4548392, at *1-2 (S.D.N.Y. Oct. 9, 2008). The conclusory pleading that Defendants each played a part in perpetrating a fraud on Plaintiffs is not enough to satisfy RICO's requirement of an organized, separate enterprise. Accord Mikhlin, 2009 WL 485667, at *3 (repetition of language of RICO statute is insufficient to plead RICO enterprise).

Accordingly, Plaintiffs' Complaint fails to adequately plead a RICO enterprise and, for this reason, the civil RICO claim must be dismissed.

2. Pattern of Racketeering Activity

A "pattern of racketeering activity" requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period." 18 U.S.C. § 1961(5); see also First Capital, 385 F.3d at 178. Predicate acts of racketeering activity encompass a variety of federal and state criminal offenses, including wire fraud and mail fraud, as alleged here. See 18 U.S.C. § 1961(1); see also 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). While federal wire and mail fraud constitute RICO predicate acts, common law fraud under state law does not. See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999).

"The mail and wire fraud statutes require a plaintiff to show that the defendant participated in a scheme to defraud victims of money or property, through the use of the mails or

an interstate wire." Anctil v. Ally Fin., Inc., No. 12-CV-8572, 2014 U.S. Dist. LEXIS 16382, at *36 (S.D.N.Y. Feb. 10, 2014) (citing United States v. Walker, 191 F.3d 326, 334 (2d Cir. 1999)) (additional citation omitted). Where a civil RICO claim is predicated on acts of fraud, a plaintiff must comply with Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity. See Anctil, 2014 U.S. Dist. LEXIS 16382, at *36 (citing Moore v. PaineWebber, Inc., 189 F.3d 165, 172-73 (2d Cir. 1999)); see also Plount v. Am. Home Assurance Co., 668 F. Supp. 204, 206 (S.D.N.Y. 1987) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions."). "Allegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, . . . where and when they took place, and . . . explain why they were fraudulent.'" Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)).

Plaintiffs' Complaint fails to plead either mail or wire fraud with the requisite particularity. While Plaintiffs allege that Dubin made certain fraudulent misrepresentations to Plaintiffs on "several occasions," both on the telephone and in writing, the Complaint fails to specify when the purported misrepresentations were made, what was specifically said or how they were fraudulent. (Compl. ¶¶ 22-23.) Nor does the Complaint "include any factual allegations tending to indicate that Defendants made the enumerated mail or wire transmissions 'for the purpose of executing' a 'scheme or artifice to defraud.'" Anctil, 2014 U.S. Dist. LEXIS 16382, at *38 (quoting 18 U.S.C. §§ 1341, 1343). Rather, the Complaint merely repeats the same conclusory allegations that Dubin made certain misrepresentations to Plaintiffs in order to induce Plaintiffs into investing in his fraudulent scheme. (Compl. ¶¶ 21-22, 120-22.) Such

conclusory allegations are insufficient to state a claim for mail or wire fraud, "no matter how many times those conclusions are repeated."[2] Anctil, 2014 U.S. Dist. LEXIS 16382, at *38.

Based on the foregoing, the Court finds that Plaintiffs' Complaint fails to adequately plead a substantive civil RICO claim. Accordingly, Defendants' motion to dismiss is granted and Plaintiffs' RICO claim is dismissed.

### C. Plaintiffs' RICO Conspiracy Claim

Plaintiffs also allege a violation of the RICO conspiracy statute. Specifically, Plaintiffs allege a violation of 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c)" of the RICO statute. 18 U.S.C. § 1962(d). Proper pleading of a substantive RICO violation is required to sustain a RICO conspiracy claim. See First Capital, 385 F.3d at 182; Wild Edibles, 2008 WL 4548392, at *3.

Since Plaintiffs' Complaint fails to state a substantive RICO claim, it similarly fails to state a claim for RICO conspiracy. Accordingly, Plaintiffs' RICO conspiracy claim is dismissed as well.

### III. Plaintiffs' State Law Claims

With respect to Defendants' request that the Court dismiss Plaintiffs' state law claims on

---

[2] The Court notes that Plaintiffs' wire fraud claim also fails to state a claim since there is no allegation that the communications occurred in interstate commerce. Where, as here, "all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated." Azkour v. Haouzi, No. 11 Civ. 5780, 2012 U.S. Dist. LEXIS 121707, at *14 (S.D.N.Y. Aug. 24, 2012) (quoting McCoy v. Goldberg, 748 F. Supp. 146, 154 (S.D.N.Y. 1990)); see also Targum v. Citrin Cooperman & Co., LLP, No. 12 Civ. 6909, 2013 U.S. Dist. LEXIS 164585, at *25 (S.D.N.Y., Nov. 19, 2013) ("[P]urely intrastate communication [is] beyond the [wire fraud] statute['s] reach and cannot serve as a predicate offense for a RICO violation.").

their merits, that part of the motion is denied. However, having found that Plaintiffs' federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claims, see 28 U.S.C. § 1367(a), it declines to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, Plaintiffs' state law claims are dismissed without prejudice.[3]

IV. Plaintiffs' Motion for Pre-Judgment Attachment

In light of the fact that Plaintiffs' Complaint is dismissed in its entirety, Plaintiffs' motion for pre-judgment attachment is hereby denied as moot.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Specifically, Defendant James Hussey's motion to dismiss for lack of personal jurisdiction is granted and Defendant Hussey is hereby dismissed from this action. In addition, the remaining

---

[3] " Since [New York's CPLR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiffs will not be prejudiced by the dismissal of their [state law] claims." Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *29 (S.D.N.Y. Nov. 19, 2007) (quoting Trinidad v. N.Y City Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006)) (alterations in original) (additional citations omitted).

Defendants' motion to dismiss the federal RICO claims is granted and those claims are dismissed with prejudice. With respect to that portion of Defendants' motion that seeks a dismissal of the state law claims on their merits, that application is denied. Rather, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and those claims are accordingly dismissed without prejudice. Finally, Plaintiffs' motion for pre-judgment attachment is denied as moot.

The Clerk of the Court is directed to enter judgment accordingly, to terminate the motion filed under docket entry 24 and to thereafter close the file in this action.

**SO ORDERED:**

Dated: Central Islip, New York
February 24, 2014

s/ Leonard D. Wexler
LEONARD D. WEXLER
United States District Judge